NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO
M.P., M.P., A.P., and H.P.

No. 1 CA-JV 24-0189

FILED 04-15-2025

---

Appeal from the Superior Court in Maricopa County
No. JS22071
The Honorable Adele Ponce, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Mother Jessica P.*

David W. Bell Attorney at Law, Higley
David W. Bell
*Counsel for Children*

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellee Kelly P.*

---

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Cynthia J. Bailey joined.

---

**F U R U Y A**, Judge:

¶1　　　　In this private termination proceeding, Jessica P. ("Mother") and her minor children, M.P., M.B.P., A.P., and H.P. (collectively "Children"), appeal the juvenile court's order denying Mother's petition to terminate the parental rights of Kelly P. ("Father") as to the Children. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2　　　　Mother and Father began dating at the age of 13 and were married in 2010. They are the biological parents of the Children, who were born between 2011 and 2019.

¶3　　　　From 2011 until late 2021, Father had a good relationship with the Children. Then, in September 2021, Father slapped M.P. with his open hand. The couple separated at that time and Mother ultimately filed for divorce in June 2022.

¶4　　　　During Mother and Father's separation and while their divorce was pending, Father continued to interact with Mother and the Children. In March 2023, Father sexually abused Mother in a bedroom closet while the Children were in the home. Father was arrested following this attack and later pled guilty to charges of sexual abuse, kidnapping, and aggravated assault in connection with it. Father was sentenced to six months in jail and was placed on lifetime probation.

¶5　　　　Father continued to visit and interact with the Children until he was incarcerated to serve his sentence. He also was able to have telephone calls with the Children during approximately the first six weeks of his sentence, until Mother changed her telephone number, making further contact impossible.

---

[1]　　　We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016).

**¶6** Mother filed a petition with the juvenile court to terminate Father's parental rights to the Children in March 2024, later amending it in June 2024. She alleged termination was proper under felony conviction and willful abuse grounds. *See* Arizona Revised Statutes ("A.R.S.") §§ 8-533(B)(4), (2). After trial, the court found that Mother had proven by clear and convincing evidence that Father had "willfully abused a child" and "the abuse include[d] serious . . . emotional injury" because the Children were present in the home when Father assaulted Mother in March 2023. Thus, it concluded that Mother had established statutory grounds for termination of Father's parental rights per A.R.S. § 8-533(B)(2). However, the court concluded that Mother had failed to prove by a preponderance of evidence that termination would be in the Children's best interests, and therefore, denied Mother's petition.

**¶7** We have jurisdiction over Mother's and the Children's timely appeals under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235 and 12-120.21(A), -2101(A)(1).

## DISCUSSION

**¶8** "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody . . . ." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Id.* Thus, to terminate a parent's rights, the court must find clear and convincing evidence to support at least one statutory ground for termination. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 353(C). But the inquiry does not end there. It must also find, by a preponderance of the evidence, that termination is in the child's best interests. *Id.*

**¶9** In this case, the court found that Mother sufficiently established grounds for termination under A.R.S. § 8-533(B)(2) but determined that termination of Father's parental rights was not in the Children's best interests. On appeal, Mother and the Children challenge only the court's best-interests finding and Father did not cross-appeal the court's finding under A.R.S. § 8-533(B)(2). Thus, we address only the best-interests finding.

**¶10** "A reviewing court should affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Brionna J. v. Dep't of Child Safety*, 255

Ariz. 471, 478 ¶ 29 (2023) (cleaned up). In conducting our review, we will "review the factual findings made by the juvenile court, and its factual findings will be accepted 'if reasonable evidence and inferences support them.'" *Id.* at ¶ 30 (citing *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580 ¶ 10 (2021)). "This deferential standard is warranted because the juvenile court is in the best position to weigh evidence and assess witness credibility." *Id.* (cleaned up).

¶11 Here, in support of its best-interests finding, the court acknowledged the bond between Father and the Children and that the Children's relationship with Father did not consist solely of abuse. The court stated that a future relationship with him would be beneficial to them. The court recognized that Father has taken classes to address his abusive tendencies, though it also acknowledged that he had much further to go. It observed that the Children are young and they could have a relationship with Father in the future. It also noted that the Children spent time with Father after his offense against Mother and spoke with him while he was incarcerated, all without impropriety. It further found that Father may improve his accountability and reconciliation with the Children and the harm he caused them in the future. Finally, it found that depriving the Children of a possible future relationship with Father would be detrimental to them. The evidence adduced at trial and reasonable inferences therefrom support these findings.

¶12 Mother contends that the court's best-interests finding is inconsistent with the evidence presented. She highlights the court's decision to give little weight to her recent remarriage and the plan for her new husband to adopt the Children. In particular, while Mother correctly observes that a stepparent who marries a biological parent may petition to adopt that parent's child at any time, *see* A.R.S. § 8-103 (stating eligibility requirements to adopt), it does not support granting relief in this case. We do not place more or less weight on the benefits of adoption depending on the identity of the petitioning party. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 13 (2016). "Rather, juvenile courts must assess the relevant facts in determining on a case-by-case basis whether a preponderance of the evidence supports a best-interests finding." *Id.* And we defer to the superior court's decision to weigh those factors in the exercise of its discretion. *Brionna J.*, 255 Ariz. at 478 ¶ 29.

¶13 Mother also recites a litany of evidence she argues supports a finding that termination is in the Children's best interests. But Mother has not shown that the court ignored her evidence. To the contrary, the court stated that it "considered the totality of the circumstances," indicating a

complete and thorough review of all evidence, including that presented by Mother. Nor has Mother shown that the court has otherwise misapplied the law or that there was a complete absence of substantial evidence to support the best-interests finding the court did make. In essence, Mother's argument invites us to reweigh the evidence, but this we cannot do. *Id.* at 478 ¶ 28 (noting that it is error for a reviewing court to reweigh evidence presented to the juvenile court).

**¶14** Because sufficient evidence and inferences adduced through trial support the court's best-interests finding, the court did not abuse its discretion in finding that termination of Father's parental rights was not in the Children's best interests. Thus, we discern no error.

## CONCLUSION

**¶15** We affirm the court's denial of Mother's petition to terminate Father's parental rights to the Children.

